# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

CHARLOTTE THOMPSON and RAYMOND BARRY,

        Plaintiffs/Appellants,

VS.

RALPH E. COULTER, JOHNNY WATKINS, and RONNIE COULTER,

        Defendants/Appellees

JOHNNY WATKINS,

        Cross-Plaintiff,

vs.

RALPH COULTER and RONNIE COULTER,

        Cross-Defendants.

)
)
)
)
) Tipton Law No. 4131
)
) Appeal No. 02A01-9708-CV-00200
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**

**September 29, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

APPEAL FROM THE CIRCUIT COURT OF TIPTON COUNTY
AT COVINGTON, TENNESSEE
THE HONORABLE JON KERRY BLACKWOOD, JUDGE

**BLANCHARD E. TUAL**
Memphis, Tennessee
Attorney for Appellants

**WALKER T. TIPTON**
Covington, Tennessee
Attorney for Appellees, Ralph Coulter and Ronnie Coulter

**ANDREW S. JOHNSTON**
Somerville, Tennessee
Attorney for Appellee, Johnny Watkins

**AFFIRMED**

                                   **ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

        Plaintiffs/appellants, Charlotte Thompson Barry and Raymond Barry, appeal the

judgment of the trial court awarding them $3,860 for the lost value of the Paulownia timber on their property (Barry property) and $4,081.98 for the property damage that resulted from the tree removal process. This judgment was against defendants/appellees, Ralph Coulter, Ronnie Coulter, and Johnny Watkins, for removal of the Paulownia trees from the Barry property. For reasons stated hereinafter, we affirm the judgment of the trial court.

The Barrys and Coulters owned property adjacent to each other in southwest Tipton County, Tennessee, upon the bluffs of the Mississippi River. There is a lengthy common law boundary between the two parcels of land. Both parcels contained Paulownia trees.

In April of 1994, Mrs. Barry called Watkins to inquire about the possibility of having some trees cut down on the Barry property. After Watkins walked around the property, the Barrys never had any further contact with him.

In that same month, Watkins contacted the Coulters and asked if he could cut down approximately 46 Paulownia trees on their land at $100 per tree. Watkins and Ralph Coulter picked out the Paulownias to be cut by Watkins. The Barrys were not contacted to insure that these trees were not on their property, and no surveys were consulted when selecting the trees.

Within the span of 2 to 3 days, Watkins removed 38 Paulownias with the help of some assistants. Some of these trees were removed from the Barry property. Just how many trees were removed is at the heart of this dispute. Each of the parties had an expert testify as to the value of the Paulownia tree removed. Just what amount of Paulownias were removed from the Barry property is hotly contested. The Barrys' expert, Scot Corbett, testified that he had not been on the actual property but had viewed pictures and some cross-sections of the Paulownia that were cut from the property. He stated that it was his opinion that 16 trunks and 15 stumps had been removed from the Barrys' property.

The Coulters' expert, Jack Leake, testified that he had been on the Barry property

2

in October of 1995 and followed a survey line delineating the division of the Barrys and Coulters. In doing so, he counted 13 stumps which had been involved in this cutting that were on the Barrys' side of the property line.

Likewise, the value of the Paulownia trees removed was sharply disputed at trial. Corbett testified that the 16 trunks each contained 200 board feet for a total of 3200 board feet. Corbett, however, did not use any recognized method in arriving at these figures. He also testified that each board foot was valued at approximately $4.00 for a total value of $12,800.

Leake testified that because the density of the growth rings on the Paulownias in question were very poor, the Paulownia lumber could only be valued at $2.00 per board foot. Along these lines, Leake secured detailed measurements at the site and, by use of the Doyle Scale, calculated the quantity of the timber removed from the Barrys' property to be 965 board feet for a total value of $1,930.

Plato Touliatos, a second expert witness, testified for the Barrys as to the damage done to their property as a result of the removal of the Paulownias. After surveying the land in question for 2-3 hours, with soil and root erosion brought on by the removal process, Touliatos reckoned the damage to be $4,081.98. More specifically, Touliatos testified that the land valuation had diminished by $2,200 because of the removal of the Paulownias. Also, Touliatos testified that in order to stabilize the current state of the land, 90 bales of pine needles would be required at a cost of $1,881.98. The Coulters and Watkins offered no testimony to rebut Touliatos's testimony as to the damages resulting from the Paulownia removal process.

The Barrys filed a complaint against the Coulters and Watkins seeking damages for the cutting and conversion of Paulownia trees from their property as well as for damages to their property resulting from the removal process. The Barrys alleged that the Coulters and Watkins had willfully trespassed upon their property and cut 32 Paulownia trees. The

3

Coulters and Watkins took issue with these allegations in their answers. This cause was heard by the trial court without a jury. After hearing the evidence in this matter, the trial court ruled that Coulter and Watkins had negligently cut 13 Paulownia trees from the Barry property and found their value to be $1,930. The trial court further found the damage to the property resulting from the removal process to be $4,081.98. The Barrys appealed.

Inasmuch as this case was tried by the trial court sitting without a jury, this Court's review on appeal is governed by Tennessee Rule of Appellate Procedure 13(d), which directs us to review the case *de novo*. *Roberts v. Robertson County Bd. of Educ.*, 692 S.W.2d 863, 865 (Tenn. Ct. App. 1985); *Haverlah v. Memphis Aviation, Inc.*, 674 S.W.2d 297, 300 (Tenn. Ct. App. 1984); Tenn. R. App. P. 13(d). In conducting a *de novo* review of the record below, however, this Court must presume that the trial court's findings of fact are correct. Under this standard of review, we must affirm the trial court's decision unless the trial court committed an error of law affecting the result or unless the evidence preponderates against the trial court's findings. *Roberts*, 692 S.W.2d at 865.

The trial judge heard the witnesses in this matter and reviewed several exhibits, including many photographs of Paulownia trees. The trial judge also was able to observe the witnesses and make a determination based upon what he saw and heard. In light of this, this court must apportion great deference to that finding when determining whether the evidence preponderates against the trial judge's determination. *See Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315 (Tenn. 1987). When a matter such as this hinges on the credibility of witnesses, the trial court will not be reversed unless there is found in the record clear, concrete, and convincing evidence other than the oral testimony of witnesses that contradicts the trial court's findings. *Galbreath v. Harris*, 811 S.W.2d 88, 91 (Tenn. Ct. App. 1990), cert. denied, 502 U.S. 939, 112 S.Ct. 374, 116 L.Ed.2d 326 (1991). As the United States Supreme Court has observed:

> The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources. In addition, the parties to a case on appeal have

4

already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is the correct one; requiring them to persuade three more judges at the appellate level is requiring too much.

*Anderson v. City of Bessemer City*, 470 U.S. 564, 574-75, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).

## Value of the Barrys' Paulownia Trees

At trial, the value placed upon the Paulownia trees removed from the Barry property was sharply debated and, essentially, came down to a battle of experts. As stated *supra*, the Barrys' expert, Corbett, testified to a total loss of $12,800 for the value of the removed Paulownia trees. Not surprisingly, the Coulters' expert, Leake, testified to a much lower loss--$1,960. In essence, these values were arrived at by multiplying the estimated amount of board feet in the removed trees by the value assigned to each board foot. The vast disparity in these estimated losses boils down to this--each expert estimated a different number of trees removed, each expert estimated a different figure as to the amount of board feet per tree, and each expert assigned a different value per board foot to each tree. In this instance, Corbett reckoned there to be 16 trunks at 200 board feet per trunk for a total of 3200 board feet. Corbett estimated each board foot to be valued at $4.00 per board foot for a grand total of $12,800 in loss as a result of the removal of the Barrys' Paulownias. Leake, on the other hand, judged there to be 13 trunks including approximately 75 board feet per tree for a total of 965 board feet at $2.00 per board foot for a grand total of $1,930 in loss as a result of such removal.

After a careful examination of the record, we find several facts in the record that corroborate Leake's valuation of the Barrys' Paulownia trees. First, after discovering that her trees had been cut, Mrs. Barry retained a forester, Mr. Charles Riddle, to survey the cutting and advise her as to the quantity of lumber removed. At the time, Mrs. Barry did not know the property line between her land and the Coulters. Riddle counted 38 Paulownia trees that had been removed and estimated the loss to be 3500 board feet. When valuating the trees per board foot, this comes out to approximately 92 board feet per tree. It is imperative to note that Riddle's estimation of board feet per tree is substantially

5

closer to Leake's estimation than to that of Corbett's. To summarize, Riddle estimated 92 board feet per tree; Leake estimated 75 board feet per tree; and Corbett estimated 200 board feet per tree. This is corroborative evidence of the accuracy of the Leake's valuation of the trees.

Secondly, Johnny Watkins testified as a logger with 25 years experience with Paulownia trees. Watkins testified that Paulownias with wide grain wood were "worthless." More specifically, Watkins stated that wide grain wood was in reference to growth rings per inch in the wood grain--the greater the growth rings per inch, the greater the value of the tree. In light of this, he testified that the trees cut off the Barry property were of poor quality when considering the growth rings per inch in the grain of the wood. This, too, is corroborative of the Leake's low valuation of the Barrys' trees.

Finally, it is important to note that Watkins attempted to sell the Paulownia wood cut from the Barrys' property to a Mr. Cubo. Cubo owns a golf course and is in the business of buying and selling Paulownia trees in the United States and Japanese markets. Cubo viewed the trees cut off of the Barrys' property before they were removed from the Coulter's property. He rejected the entire lot.

In light of the above facts in the record and in light of the weight given to the trial court's determination of credibility, the trial court's award of $3,860 to the Barrys for their loss of the trees is supported by the great weight of the evidence and, accordingly, we affirm its judgment in this matter.

**Damage to the Barrys' Land Resulting from Tree Removal**

Appellee argues "that the record does not contain any competent evidence from which the trial court can assess damage to the Barrys' realty." We disagree.

6

At trial, there was evidence concerning the damage done to the Barry land as a result of the tree removal. There was the deposition testimony of Plato Touliatos. Touliatos is self employed and owns a nursery and landscaping company called Trees by Touliatos. He has been in the business of landscaping and forestry since 1957. Touliatos testified that as a result of the logging process, the Barrys' land was devalued by $2,200 from erosion and runoff. In removing the Paulownias from the Barrys' property, Watkins used a 508 Caterpillar log skidder which was approximately 20 feet long, an 18 wheeler, a forklift, and 2 chainsaws. Touliatos testified that the damage associated with the land was the result of removing the trees by skidding them off the site. More specifically, he stated that the forest litter, which consisted of leaves from the previous years that had accumulated on the land, had been removed thereby causing accelerated erosion and runoff. Touliatos testified that it would take 90 bales of pine needles at a price of $1,881.98 in order to stop the erosion and runoff and to stabilize the site where the trees had been removed. Touliatos stated that this would not change what had occurred in the three years following the logging but would stop future erosion and runoff. Not included in Touliatos's damage estimate was the damage done to surrounding trees as a result of the logging.

Besides the deposition testimony of Touliatos, evidence in the record is scarce concerning the damage done to the Barry land due to the logging process. Watkins testified as follows:

> Q. Okay. How much damage do you think was done, or how much damage did you observe from the cutting and removal of the Paulownia trees?
>
> A. As far as damage, none other than just naturally removing trees.

Counsel for appellee cites this Court to *Williams v. Southern Railway Co.*, 396 S.W.2d 98, 101 (Tenn. Ct. App. 1965) wherein the Court stated:

> [t]he measure of these damages, being to real estate, would be the difference between the reasonable market value of the premises immediately prior to and immediately after the injury, provided the cost of repairing the injury to the property would be more than the depreciation in its value as the result of the

7

> injury, but if the reasonable cost of repairing the injury is less than the depreciation in value, the cost of repair would be the lawful measure of damages.

*Williams v. Southern Railway Co.*, 396 S.W.2d 98, 101 (Tenn. Ct. App. 1965)(citations omitted). Counsel for the Coulters insists that the record contains no evidence of the diminution in value of the Barrys' property and, as such, the record contains no evidence upon which the trial court could award damages to the real property. Appellees further argue that if the $2,200 figure that Touliatos testified to could be considered competent proof of diminution in value, the proof still does not support the trial court's award of $4,081.98. More specifically, appellees contend that the most the trial court could have awarded as damages under the facts of this case is $1,881.98--the lesser of the cost to cure versus that of the diminution in value of the land.

Touliatos did, in fact, testify to the "devaluation" of the Barrys' land as a result of the logging performed by Watkins. He placed a $2,200 price tag on this "devaluation" and did so based upon his "empirical appraisal" and his many years of buying and selling land. Also, the $1,881.98 for the cost of the pine needles was not to heal the land from the past harm done by the logging process but to stabilize it and stop the erosion and runoff at its present state. Obviously, the trial court found Touliatos's testimony concerning the damages to the Barrys' land to be compelling. We agree. Accordingly, we affirm the trial court's judgment awarding the Barrys $4,081.98 for damages imposed upon their land by the logging process undertaken by Watkins and the Coulters.

On a final note, counsel for appellants insists that the Barrys were prejudiced in this matter in that both counsel for the Coulters and Watkins filed post-trial memorandums wherein they argued issues that they believed the Barrys failed to prove in their case at trial. Appellants contend that the harm was created when they were not allowed an opportunity to respond to the Coulters' and Watkins' post-trial memorandums. Counsel for the Barrys beseeches this Court to remand this matter to the trial court for placement under a different trial judge in Tipton County in order to hear the matter *de novo* without the prejudice of having heard the case before.

In the case under submission, counsel for the Coulters and Watkins did not file pre-trial memorandums. In fact, at the end of the trial in this matter, counsel for the above parties requested of the trial court that they be allowed to file memorandums prior to the court's ruling. The trial court obliged. In the meantime, counsel for the Barrys had moved his place of business without notifying opposing counsel of his change of address. As a result, counsel for both the Coulters and the Watkins sent copies of their respective memorandums to counsel for the Barrys at his previous address. Consequently, counsel for the Barrys did not receive the memorandums until after the trial court's ruling had been handed down. Counsel for the Barrys appeals to this Court under the premise of fundamental fairness and cites us to no authority to support his proposition.

It is unfortunate that the post office did not forward the memorandums to counsel for the Barrys at his new business address; however, it is the opinion of this Court that the Barrys have not been prejudiced by this fact. A trial court does not base its opinion on trial memorandums but upon the evidence laid down at trial together with the law of the state. A trial memorandum is not evidence in and of itself but is only a rehashing of the issues raised at trial and the arguments therein. Accordingly, it is the opinion of this Court that the Barrys have not been prejudiced by the above, and the Barrys' request to remand this matter to the trial court with a different trial judge is denied.

In summary, the judgment of the trial court awarding the Barrys $3,860 for the loss of the trees on their property and $4,081.98 for the damages suffered as a result of the logging operation is affirmed. The Barrys' request to remand this matter to the trial court with a different trial judge is denied. Costs are assessed against the Barrys, for which execution may issue if necessary.

 

                                         _____

                                         HIGHERS, J.

CONCUR:

_____
FARMER, J.


_____
LILLARD, J.